## IN RE THE NEWPORT CHARTER.

The provisions of the city charter of the city of Newport, in so far as they withhold from registry voters the right to vote for aldermen and common councilmen, or do not extend such right to the registry voters, are unconstitutional and void.

Aldermen and common councilmen are civil officers within the meaning of article 2, section 2, of the Constitution of Rhode Island.

The limitations upon the right to vote for aldermen and common councilmen in the city of Providence, contained in the proviso which concludes article 2, section 2, of the Constitution of Rhode Island, cannot be extended by construction so as to apply to the cases of other cities.

PUBLIC LAWS R. I. cap. 454, of April 2, 1875, being " An act to revise, consolidate, and amend the act entitled, ' An act incorporating the city of Newport,' and the several acts in amendment thereof and in addition thereto," contains in section 10 the following provisions :

" On the third Wednesday in April in every year the qualified electors of the said city shall give in their votes on separate ballots in their respective wards for a mayor, superintendent of public schools, street commissioner, city marshal, and city treasurer, to serve one year, from the first Monday of the next June to the same day in the succeeding year, and for school committee to serve for the term as by law provided. And on the same Wednesday in every year, the electors of each ward qualified to vote on any proposition to impose a tax, or for the expenditure of

money in said city, shall give in their votes in their respective wards for one alderman and two common councilmen, who shall reside in the ward for which they are elected, to serve for one year from the first Monday of the next June as aforesaid, and until others are elected and qualified to fill their respective places.

" All the ballots shall be sorted, counted, sealed up, certified, and directed in open ward meeting to the city clerk, and shall be opened and counted by the board of aldermen within forty eight hours after the closing of the polls; and said board shall cause written notices to be given to such persons as shall have been elected to said offices.

" The persons receiving the majority of all the votes cast at such election for the officers provided for or mentioned in this section, shall be severally elected to the office for which the votes were given. In case of failure to fill said offices at such election, or in case any person elected to either of said offices shall refuse to accept, the board of aldermen shall issue warrants for another election to fill the vacancy, and so, from time to time shall order new elections until all such offices shall have been filled; and if a vacancy shall occur by death or otherwise in the office of mayor, or of any alderman or councilman, during the current municipal year, the board of aldermen may issue warrants for elections to fill the vacancy; provided that a period of not less than seven nor more than ten days shall always intervene between such elections."

Public Laws R. I. cap. 337, of March 13, 1883, in amendment of cap. 454, provide:

" SECT. 1. The qualified electors of the city of Newport shall, on the second Wednesday of September, in the year eighteen hundred and eighty three, and in each year thereafter, give in their votes on separate ballots in their respective wards, for a mayor, street commissioner, city marshal, and city treasurer, to serve one year from the first Monday of the next January to the first Monday in January in the succeeding year, and until others are elected and qualified to fill their respective places, and for school committee to serve for the term as by law provided.

" And on the same Wednesday in the year eighteen hundred and eighty three, and in each year thereafter, the electors of each

ward qualified to vote on any proposition to impose a tax, or for the expenditure of money in said city, shall give in their votes in their respective wards for one alderman and two common councilmen, who shall reside in the ward for which they are elected to serve for one year, from the first Monday of the next January as aforesaid and until others are elected and qualified to fill their respective places."

Doubts having arisen whether these provisions were consistent with article 2, section 2, of the Constitution of the State, which is printed in full, *ante* p. 646, *In re The Realty Voters*, the governor, acting under article 10, section 3, of the Constitution, which provides that " the judges of the Supreme Court shall give their written opinion upon any question of law whenever requested by the governor," addressed the following communication to the justices of the court :

STATE OF RHODE ISLAND, EXECUTIVE DEPARTMENT,

PROVIDENCE, *April* 10, 1883.

*To the Honorable Judges of the Supreme Court :*

I have the honor, in accordance with the provisions of section 3, of article 10, of the Constitution, to request your opinion on the following question of law, namely :

Are the provisions for the election of aldermen and common councilmen in the city of Newport, contained in chapter 454 of the Public Laws passed April 2, 1875, and in the act in amendment thereof passed March 13, 1883, constitutional, in so far as they confer the right to vote in said elections exclusively on electors who are qualified to vote for the imposition of a tax, or the expenditure of money, and do not extend it to registry voters?

ALFRED H. LITTLEFIELD, *Governor.*

OPINION OF THE COURT.

*April* 12, 1883.

*To His Excellency Alfred H. Littlefield, Governor of the State of Rhode Island and Providence Plantations :*

We have received from your Excellency a communication requesting our opinion on the following question of law, to wit :

" Are the provisions for the election of aldermen and common councilmen in the city of Newport, contained in chapter 454 of the Public Laws passed April 2, 1875, and in the act in amendment thereof passed March 13, 1883, constitutional, in so far as they confer the right to vote in said elections exclusively on electors who are qualified to vote for the imposition of a tax, or the expenditure of money, and do not extend it to registry voters ? "

In reply we have to say that we are of opinion that the provisions referred to, in so far as they withhold the right of voting in said elections from the registry voters, or do not extend it to them, are unconstitutional.   The Constitution, article 2, section 2, confers on registry voters, along with other voters, " the right to vote in the election of all civil officers, and on all questions in all legally organized town or ward meetings," subject to the following proviso, to wit: " That no person shall at any time be allowed to vote in the election of the city council of the city of Providence, or upon any proposition to impose a tax, or for the expenditure of money in any town or city, unless he shall within the year next preceding have paid a tax assessed upon his property therein valued at least at one hundred and thirty four dollars." It follows that the registry voters of the city of Newport have a right, under the Constitution, to vote in the election of aldermen and common councilmen in said city, if the aldermen and common councilmen are civil officers, unless they are prevented by the proviso.   But they are clearly not prevented by the proviso, for to vote in the election of aldermen and common councilmen in the city of Newport is neither to vote " in the election of the city council of the city of Providence," nor to vote " upon any proposition to impose a tax, or for the expenditure of money." It is true the aldermen and common councilmen of the city of Newport have power under the charter to impose taxes and expend the moneys of the city, but because of this it cannot be maintained that to vote for them is to vote on a proposition to impose a tax or for the expenditure of money.   The elective franchise is so broadly and so clearly conferred in the body of the section that it ought to be supported as conferred, unless it is clearly cut down in the proviso.   It is also true, without doubt, that the right of voting in the election of the city council of the city of Providence

was limited by the proviso, because the city council had power to impose taxes and make expenditures, and that probably for the same reason the city of Newport would have been included with the city of Providence in the same proviso, if it had been incorporated as a city before the adoption of the Constitution. But the city of Newport had not then been incorporated and was not included, and we know of no principle on which it can be included now by construction. It cannot even be said that it was not purposely omitted ; for if the authors of the Constitution had intended to have the proviso extend to any city subsequently incorporated, they could easily have manifested their intent by the insertion of a few words to that effect. It is to be remembered that the right of voting in the election of the city council of the city of Providence, as it had previously existed, was enlarged, not abridged, by the proviso ; for, before the Constitution, the right was confined to freeholders and their eldest sons. Whereas, to limit the right of voting in the election of the city council of any city incorporated since the adoption of the Constitution is, in effect, to abridge a preëxisting right ; for the city council not only has power, newly given by charter, to impose taxes and make expenditures, but it succeeds the town council in the prudential management of town affairs ; and in the election of the town councils registry voters participate on an equality with other voters. It is no more than fair to suppose that the authors of the Constitution, perceiving this, concluded that it was unwise or impolitic to put it in the power of the General Assembly, by a mere change in the form of town or municipal government, to withdraw or curtail to any extent a right of voting which had once been acquired under the Constitution, and that it therefore purposely omitted to subject any city subsequently incorporated to the proviso.

It remains only to consider the question, if any question there be, whether aldermen and common councilmen are civil officers. We do not think there can be any doubt that they are. They are intrusted with the exercise of very important and responsible civil functions, and if they be not civil officers, it is impossible for us to conceive what town or city functionary is a civil officer under the Constitution. In conclusion, therefore, we repeat that we are

of opinion that the provisions referred to, in so far as they attempt
to limit the right of voting as aforesaid, are unconstitutional.

THOMAS DURFEE,
CHARLES MATTESON,
JOHN H. STINESS,
P. E. TILLINGHAST,
G. M. CARPENTER, JUN.

---

ERRATA.

Page 406, line 23.   Read, *Wheatley* v. *Williams,* 1 M. & W. 533.

Page 463, line 8.   Read, 5 Crim. Law Mag. 223.

Page 514, last line of head note.   Read, *Smith* v. *Smith,* 4 R. I. 1, affirmed.

Page 521, first line of second paragraph of head note.   Read, On demurrer to
B.'s bill.

Page 532, line 18.   Read, *Drowne* v. *Stimpson.*

Page 546, line 7.   Read, *Shroyer* v. *Richmond & Staley,* 16 Ohio St. 455.